FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 09, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EUSEBIO ALVAREZ-GARCIA,<br><br>Defendant. | No.   4:19-cr-06033-SMJ<br><br>**ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S MOTION TO DISMISS** |

On May 28, 2020, the Court heard argument on Defendant Eusebio Alvarez-Garcia's Motion to Dismiss, ECF No 35. Defendant moved to dismiss the indictment on the grounds that the predicate order of expedited removal was entered in violation of his due process rights. At the conclusion of the hearing, the Court orally granted the motion, finding Defendant was not given an opportunity to review the contents of his sworn statement before signing and that he plausibly could have been granted withdrawal of his application for admission. This Order memorializes and supplements the Court's oral ruling.

## BACKGROUND

In May 2019, immigration officials encountered Defendant in the Benton County Jail where he was in custody on pending state charges. ECF No. 35 at 8.

Defendant is charged with one count of illegal reentry after removal in violation of 8 U.S.C. § 1326. ECF No. 1. Defendant is a thirty-five-year-old Mexican national who obtained a sixth-grade education in Mexico. ECF No. 35 at 2. He first came to the United States in February 2003. *Id.* Shortly after midnight on February 9, 2003, immigration officials found Defendant and others in the trunk of a vehicle traveling from Tijuana, Mexico into the United States, and the officials took Defendant into custody. *Id.* at 2–3. Defendant was then deported by expedited removal process and removed to Mexico the same day. ECF No. 36 at 2; ECF No. 35 at 7.

Defendant submitted a declaration stating that after he and the others were found in the trunk by immigration officials, he was separated from the others and taken to a holding area. ECF No. 35-1 at 3. He remembers speaking to "an immigration officer" in Spanish but does not remember the officer's name, though Defendant remembered that the officer was male. *Id.* Defendant said he remembers being asked his name and where he was from but does not recall any other questions. *Id.* Defendant recalls being told to sign one document by the officer who spoke Spanish but was not told what he was signing, and Defendant represents the officer did not read him any questions from the document or repeat back his answers. *Id.* Defendant avers he was later asked to sign four or five more documents by officers who spoke mostly in English and Defendant did not know what he was signing. *Id.* at 4. The I-867B Record of Sworn Statement and Jurat for Record of Sworn

1  Statement includes language indicating that the alien had read or had read to him the
2  answers contained on each of the three pages. ECF 35-3 at 3. The Jurat was signed
3  and Defendant's initials appear on each page. *Id.* at 1–3. However, the document is
4  in English, and Defendant indicated in his sworn statement that he did not understand
5  English. ECF No. 35-1 at 4; *see* ECF 35-3.
6       During his testimony, Defendant confirmed that he remembered the
7  immigration officer who spoke to him was a man, and that he remembered being
8  asked his name, date of birth, and where he was from as well as other questions.
9  However, Defendant did not remember what those questions were. He confirmed
10 that at no point in the process did someone review the questions or his answers with
11 him, and said he was told he was being returned to Mexico and that he could not
12 come back for ten years without authorization.
13      Customs and Border Protection Officer Margo Williams interviewed
14 Defendant during the expedited removal proceedings. ECF No. 35 at 4; ECF No. 36
15 at 4. Officer Williams testified at the hearing that she does not remember Defendant
16 but described her general practice for processing expedited removal interviews. She
17 indicated that supervisors generally determined who would be voluntarily returned
18 and who would be removed by expedited removal, and that this determination would
19 vary based on factors such as who was the supervisor on the day shift, how many
20 staff were on a particular shift, the amount of time the person had been detained in

ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S
MOTION TO DISMISS – 3

custody, the number of times the person had previously been detained, or the person's health.

Officer Williams indicated that when she conducted interviews for expedited removals, she would introduce herself and explain to the alien that she was going to take a sworn statement, which meant that she would ask them questions and type the answers that they gave. She testified that at the end of the interview, she would print out the questions and answers and would tell the person that these were the answers they had given, but she did not always read the sworn statement back to the alien at the conclusion of the interview. She testified she did not remember whether she had read Defendant's answers back to him.

## LEGAL STANDARD

A defendant charged with illegal reentry can defend against the charge by attacking the validity of the prior removal. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To sustain such an attack, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief" from the predicate removal order, (2) the deportation proceedings "improperly deprived [the defendant] of the opportunity for judicial review," and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d).

As to the first and second requirements, expedited removals of inadmissible

ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S
MOTION TO DISMISS – 4

arriving noncitizens do not provide for administrative review except in the instance of a noncitizen claiming asylum or claiming to be a legal permanent resident. 8 U.S.C. § 1225(b)(1)(C); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011); *see also Raya-Vaca*, 771 F.3d at 1202 (finding defendant exhausted available administrative remedies and was deprived of judicial review in expedited removal proceeding with no opportunity for administrative or judicial review). Thus, a defendant removed through expedited removal proceedings can prevail by showing that entry of the removal order was fundamentally unfair. *Raya-Vaca*, 771 F.3d at 1202. To show fundamental unfairness, the defendant must show that (1) entry of the order violated his right to due process, and (2) he suffered prejudice as a result. *Raya-Vaca*, 771 F.3d at 1202.

## DISCUSSION

**A.    Defendant has shown a due process violation**

Defendant makes three arguments that the expedited removal process violated his due process rights: (1) he was not informed that he was in removal proceedings, (2) he was not allowed to review his sworn statement or have the statement read to him prior to signing, and (3) he did not sign the reverse side of the I-860 form. ECF No. 35. Because the Court finds Defendant was not given the opportunity to review his sworn statement, which constitutes a due process violation, the Court does not reach the remaining arguments

In an expedited removal proceeding, the immigration officer is required to "record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction." 8 C.F.R. § 253.3(b)(2)(i). This Court has previously noted that in the context of an expedited removal proceeding, the opportunity to review the sworn statement is particularly important because this single safeguard is often both the only opportunity for the alien to respond to the charge against him and the only record of the proceedings. *See United States v. Vicente-Vasquez*, No. 1:19-CR-02030-SMJ, ECF No. 35 at 8; *see also Raya-Vaca*, 771 F.3d at 1202 ("Due process always requires, at a minimum, notice and an opportunity to respond.") (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

In this case, Defendant's declaration indicates that he was not read his answers before he was asked to sign and initial the Jurat and Record of Sworn Statement, and in fact that he was not told what he was signing. ECF No. 35-3. The Government presented evidence that Defendant was told what he was signing, but not that he was given any opportunity to read or have read to him the contents of the documents. Officer Williams said she only sometimes read the alien's answers back and she did not recall whether she had read Defendant's answers back to him before instructing him to sign and initial. The Jurat and Record of Sworn Statement

ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S
MOTION TO DISMISS – 6

were in English and the Government's witness acknowledged during her testimony that a person who does not read English would not be able to understand the document. Based on this evidence, the Court finds Defendant was not read his answers before signing and initialing the as required by 8 C.F.R. § 253.3(b)(2)(i) and that this amounts to a due process violation.

### B. Defendant has shown he suffered prejudice

A defendant may establish prejudice by showing that, but for the due process violation, there were "plausible grounds for relief" from the removal order. *Raya-Vaca*, 771 F.3d at 1202–06. One form of such relief is the border agent's discretionary decision to permit the alien to "withdraw" his application for admission to the country implied from his presence in the country, known as granting the alien "voluntary departure" rather than forced removal, or "withdrawal." *Id* at 1206, 1210. (citing 8 U.S.C. § 1225(a)(4)).

Relief from removal need not be established to a certainty—only shown to be "plausible"—although the alien cannot prevail by showing a mere "theoretical possibility" that relief would have been granted. *Id.* at 1207. To assess the plausibility of withdrawal being granted, Courts look to the factors given to immigration officials meant to guide them in making the decision:

(1) the seriousness of the immigration violation;
(2) previous findings of inadmissibility against the alien;
(3) intent on the part of the alien to violate the law;
(4) ability to easily overcome the ground of inadmissibility;

   (5) age or poor health of the alien; and
   (6) other humanitarian or public interest considerations.

*Id.* at 1207. Withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* (citing *Barajas-Alvarado*, 655 F.3d at 1091).

  In *Raya-Vaca*, several factors informed the Ninth Circuit's conclusion that withdrawal was plausible. *Id.* at 1208. Factors weighing against plausibility included the alien's extensive history of immigration violations and his relative youth and good health. *Id.* However, because the alien had not committed fraud, and because members of his family, including a long-term partner and mother, lived in the United States, the panel found that relief was plausible.[1] *Id.*

  As a preliminary matter, Officer Williams' testimony indicates the immigration officials who decided to grant voluntary departure or process aliens through expedited removal proceedings considered factors outside of those given to immigration officers. These included apparently arbitrary factors such as how many staff were on a particular shift and the amount of time the person had been detained in custody. Although the inclusion of these factors is concerning, the Court

---

[1] The panel also considered other factors, including the alien's minimal criminal history and statistics showing that withdrawal was commonly granted under similar circumstances. *Id.* at 1209.

will restrict its analysis to the factors the Ninth Circuit has identified as relevant to the agency's exercise of discretion: factors given to immigration officials to guide in determining whether to grant withdrawal. *See Raya-Vaca*, 771 F.3d at 1206–07.

At the time of his removal, Defendant had no prior criminal or arrest history, no prior immigration history, he did not commit any fraud on immigration officials,[2] and he had multiple family members living in the United States. ECF No. 35 at 20–21. Specifically, he had four aunts living in Chicago as legal permanent residents married to U.S. citizens and his brother lived in Chicago with one of his aunts. ECF No. 35-1 at 1–2. Defendant's youth and good health undermined the plausibility of withdrawal. *Raya-Vaca*, 771 F.3d at 1208. Defendant's eligibility for withdrawal was therefore somewhat more favorable than in *Raya-Vaca* and Defendant has shown it is plausible he would have been granted voluntary withdrawal of his

---

[2] The Government argued the manner of Defendant's crossing should weigh against finding withdrawal plausible because Defendant "paid two teenagers to each commit a federal felony." ECF No. 36 at 20. Defendant countered that he did make the arrangements to be smuggled into the United States and did not pay the teenagers, but simply reported to immigration officials what he believed the individuals were being paid. ECF No. 40 at 5. However, the Court finds the Government's argument unconvincing. That Defendant knowingly intended to violate immigration laws by crossing the border without authorization does not alone constitute intent to violate the law. *See United States v. Vieira-Ferel*, 2019 WL 3558169 at *5 (D. Ore. Aug. 5, 2019) (finding intent to cross border to work insufficient to show intent to violate law). Further, the Government was not able to provide any legal authority to support its argument that hiding in the trunk of a car constitutes fraud for the purpose of the voluntary departure factors.

ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S MOTION TO DISMISS – 9

application. As such, Defendant has shown prejudice.

## CONCLUSION

Defendant has successfully shown that the order of removal underlying this prosecution was entered in violation of his right to due process because he was not allowed to review the statements he allegedly made prior to removal. And because Defendant has shown that he was a plausible candidate for withdrawal, he has demonstrated that the violation resulted in prejudice. Therefore, the removal order was fundamentally unfair, and the indictment must be dismissed.

Accordingly, **IT IS HEREBY ORDERED**:

Defendant's Motion to Dismiss, **ECF No. 35**, is **GRANTED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 9th day of June 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge